Jeffrey L. DAYTON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–8526.

Court of Appeals of Alaska.

Oct. 10, 2003.

---

42. *Id.*

43. 742 F.2d 541, 542 (9th Cir.1984).

44. *Id.* at 542–43.

45. *Id.* at 543 & 545.

46. *Id.* at 545.

Geoffry B. Wildridge, Assistant Public Defender, Fairbanks, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Jeffrey O'Bryant, Assistant District Attorney, Fairbanks, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

STEWART, Judge.

Jeffrey L. Dayton challenges the restitution portion of his sentence for third-degree assault. Dayton claims the court erred when it ordered restitution of $2,416 for a computer and $1,649.98 for software. As we discuss below, we direct the superior court to reduce the award for the computer and software to $3,500. Dayton also claims the court should have granted his motion for reconsideration of the restitution order. We conclude that Dayton has not shown that the superior court abused its discretion when it denied reconsideration.

### Background facts and proceedings

In October 2001, Abbie West occupied a cabin in Salcha owned by Dayton's brother, Eddie Dayton, a dog musher. West, also a dog musher, was staying at the cabin with her dogs and was caring for many of Eddie Dayton's dogs.

On October 31, Dayton came to the cabin and demanded to be let inside. He broke a window in the cabin. Although West tried to keep the door closed, Dayton kicked in the door cutting West's hand.

Once inside, Dayton exhibited radical mood swings, ranging from violence to caring. He yelled at West and started removing her belongings from the cabin and throwing them in West's truck. Several items owned by West were damaged. Dayton brandished a handgun he was carrying and asked West, "Do you want to mess with me?" The troopers were called to the scene and arrested Dayton.

The grand jury indicted Dayton on one count of first-degree burglary and one count

of third-degree assault.[1] The State filed an information charging one count of fourth-degree assault and one count of fourth-degree criminal mischief.[2] Ultimately, Dayton reached a charge bargain with the State; Dayton would change his plea to third-degree assault, the State would dismiss the remaining charges, and sentencing would be open.

Before sentencing, the State filed a motion for restitution to be ordered for West's benefit. In support of the motion, the State attached West's list of property that Dayton damaged, along with several documents supporting her financial loss. At sentencing on September 25, 2001, Dayton's attorney asked the court to schedule a restitution hearing because he had not had time to review the restitution request. Because West was present at the sentencing, Superior Court Judge Charles R. Pengilly suggested that West testify about her losses so that she would not have to return later. Dayton agreed.

Under questioning by Judge Pengilly, West said that the prices she submitted for her losses were accurate. West acknowledged that the value of the computer hardware depreciated between the time she bought it and when West destroyed it, but she said she could have sold the system she had for $3,500. Judge Pengilly tentatively suggested restitution in the amount of $5,000 for all her losses, including the computer system, and indicated that he would schedule a further hearing if Dayton contested the amount and wished to present evidence.

Dayton requested a hearing which the court held on December 2, 2002. West testified again and described the financial losses she incurred, and the methodology she employed to calculate her damages. Dayton cross-examined West and presented testimony from an investigator from the Public Defender's office.

When the court told Dayton that the State had presented sufficient evidence to support the restitution award, Dayton asked for yet another hearing so that he could present additional evidence on the value of the damaged items. Judge Pengilly denied that request and said that he would conclude the hearing.

Judge Pengilly found that West was a credible witness. He found that the amount of the damages that West described was uncontroverted. After deducting several items from the restitution request, Judge Pengilly entered a judgment for restitution in the amount of $6,592.82.

Dayton moved for reconsideration of the restitution order. Dayton once more asked for another hearing to present additional evidence, including information he had obtained on the price of a computer. Dayton renewed his argument that there was no proof that West had suffered any financial loss regarding the computer software and claimed the value of the computer was unverified. The superior court denied Dayton's motion through inaction.[3]

*Restitution for the damaged computer*

Dayton attacks the portion of the restitution order attributable to West's computer loss. First, Dayton argues generally that the evidence does not support the value attributed to the computer. But West testified at the two hearings and described how she valued her computer equipment. She explained that she went to the OfficeMax store and described her damaged computer system to a salesman. The salesman provided her with a written quote that included, among other things, the price for the computer and the software that was installed on the damaged machine. West provided this writing to the court. The court found West's testimony credible.

Dayton argues that the superior court's restitution order is inflated because the court awarded restitution for West's broken computer based on the cost of a "new, improved [replacement] computer." But the record refutes this claim. The State asked for computer hardware restitution in the amount of

---

**1.** AS 11.46.300(a) and AS 11.41.220(a), respectively.

**2.** AS 11.41.230(a) and AS 11.46.484(a), respectively.

**3.** *See* Alaska R.Crim. P. 42(k)(4).

$2,416. (West explained that the purchase prices of the various items of equipment were reconstructed by a computer salesman at OfficeMax.)

But even though Judge Pengilly did not order Dayton to buy West a "new, improved" computer, the restitution order does pose a problem. Judge Pengilly adopted the State's restitution figure of $2,416 for the computer hardware, even though West explained that this was the original cost of the equipment, and that the contemporaneous value of the equipment was less.

In her testimony, West acknowledged that her system was worth less than its original purchase price because (1) her system was one year old when Dayton destroyed it, and (2) Intel had just issued its next generation chip (the Pentium IV). Even so, West declared that her system (hardware and software combined) could have been sold for at least $3,500 because the system was in perfect working order when it was destroyed.

■ Judge Pengilly awarded combined restitution of $4,066 for West's computer hardware and software—i.e., some $550 more than West's estimate of the system's contemporaneous value. Because Judge Pengilly awarded restitution for the full original purchase price of the hardware and software, without discount for the age of the system, we conclude that the record fails to support this award. We therefore direct the superior court to reduce the combined award for hardware and software to $3,500.

■ Dayton also complains that he did not have any meaningful chance to contest the values testified to by West and did not have sufficient notice of her claim. But the State filed a motion for restitution before sentencing that listed the items and the price for each that formed the basis for the restitution request. The motion included a general description of each item along with supporting documentation that West provided the State. West testified at sentencing and Dayton had the opportunity to ask her about the property during cross-examination. Several weeks later, the court held another restitution hearing at Dayton's request, and West again testified and was available for cross-examination. We reject Dayton's claim that he did not have a meaningful chance to contest the values proposed by the State.

Finally, Dayton argues that the restitution order should be vacated because West had "unclean hands." Dayton makes this claim because West took all of the broken computer equipment, except for the monitor, to the dump before Dayton's investigator could examine the equipment to assess its value.

■ But after West testified at the first restitution hearing (on the day of Dayton's sentencing), Judge Pengilly told her that she was now "free to dispose of [the] property [in] any way [she saw] fit." Dayton's attorney did not object to the court's comment. In particular, Dayton's attorney did not inform Judge Pengilly that West should be ordered to hold onto the computer equipment because the defense intended to pursue an independent appraisal of the replacement value of the equipment. Thus, the record fails to show even a colorable claim of unclean hands.

*Restitution for software*

■ Dayton next argues that the court should not have ordered restitution for software that was installed on West's damaged computer. Dayton argues that restitution was not warranted because there is no evidence that West "permanently lost" the software discs used to install the software on the damaged computer. Dayton argues that if West finds the discs, she could install them on her new computer.

Dayton advances a view of the record in a light most favorable to his argument. The final hearing on restitution occurred over a year after Dayton's crime, and West had been unable to find the software. She testified that in reaction to Dayton's crime, she moved away from the cabin almost immediately. By the time of the restitution hearing, she had not located the discs.

This evidence provided the superior court with a sufficient basis to conclude that West had to obtain replacement software to make her whole. Thus, the superior court properly ordered Dayton to make restitution for the software.

*Dayton's motion for reconsideration*

■ Dayton filed a motion for reconsideration. The superior court did not act on Dayton's motion, and, by operation of law, the motion was deemed denied.[4]

In the motion, Dayton again asserted that there was no proof that the software was lost and renewed his claim that the cost of the computer equipment was not verified. In the alternative, Dayton asked for an additional hearing to present evidence on the cost of an alternative computer.

As we discussed above, the superior court properly ordered restitution for the computer and software. Furthermore, Dayton had ample notice of the hearings during which the court considered restitution. The court was not required to reconsider its rulings and schedule a third hearing on restitution so that Dayton could present evidence on the value of an alternative computer.

From our review of the record, we conclude that the superior court did not abuse its discretion by declining to act on Dayton's motion for reconsideration.[5]

*Conclusion*

We direct the superior court to amend the restitution order to reflect a $3,500 value for the computer and software. As amended, the restitution order of the superior court is AFFIRMED.

---

**4.** *See* Alaska R.Crim. P. 42(k)(4).

**5.** *See Neal & Co. v. Association of Village Council Presidents Regional Housing Authority,* 895 P.2d 497, 506 (Alaska 1995).